DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Alan MacNellis, appeals from his conviction in the Wadsworth Municipal Court. This Court affirms in part and reverses in part.
 I. {¶ 2} On May 11, 2007, Appellant, Alan MacNellis, was charged with one count of public indecency in violation of R.C. 2907.09(A)(1), a misdemeanor of the fourth degree. MacNellis' case proceeded to a bench trial on August 20, 2007. On September 24, 2007, the trial court entered an order, convicting MacNellis of one count of public indecency. The trial court sentenced MacNellis to 90 days of jail, but suspended the sentence on the condition that he serve 90 days of house arrest. The trial court also fined him $150. The trial court then stayed the sentence for 30 days to allow MacNellis to appeal. MacNellis timely appealed the trial court's decision, raising two assignments of error for our review. *Page 2 
 II. ASSIGNMENT OF ERROR I "THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE TRIAL COURT'S FINDING THAT [MACNELLIS] WAS GUILTY OF PUBLIC INDECENCY, AND THAT [SIC] MISDEMEANOR CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 3} In his first assignment of error, MacNellis asserts that his conviction for public indecency was not supported by sufficient evidence and was against the weight of the evidence. We disagree.
 {¶ 4} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal *** if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 5} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Therefore, we will address MacNellis' claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of his claim of insufficiency. *Page 3 
 {¶ 6} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 7} MacNellis was convicted of one count of public indecency, in violation of R.C. 2907.09(A)(1), a misdemeanor of the fourth degree. Pursuant to R.C. 2907.09(A)(1),
 "No person shall recklessly do any of the following, under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household:
 "Expose the person's private parts[.]"
 {¶ 8} The record reflects that the State presented three witnesses at trial including Heather Frombough, Jennifer Uhl and Officer Charles Poultney. MacNellis testified but presented no witnesses on his behalf.
 {¶ 9} Ms. Frombough testified that she resides in a townhouse located on Grace Lane in Seville, Ohio. Ms. Frombough stated that her neighborhood is comprised of townhouses. MacNellis also lives in a townhouse in this area. She stated that at about 7:00 p.m. on April 24, 2007, she was walking her dog around her neighborhood. She stated that she noticed an Asian woman, who lives in MacNellis' building, looking in the direction of MacNellis' townhouse. As she approached the woman, Frombough's dog started barking. The woman walked away. Frombough stated that she did not think much of the encounter, so she continued on her walk. *Page 4 
When she returned down the same path about 20 or 30 minutes later, she glanced up towards MacNellis' townhouse. Frombough observed MacNellis standing naked in his front doorway, fondling himself.
 {¶ 10} Frombough testified that it was very unusual to even see MacNellis' front door open because the doors to his townhouse are never open and the shades are always drawn. Frombough immediately returned to her townhouse and phoned the manager of the complex, Jennifer Uhl. Uhl told Frombough to call the police. A few days later, Frombough gave a statement to the police regarding the incident. Frombough testified that she had no doubt that MacNellis was the person she observed in the doorway. She further testified that her view of MacNellis was not obscured and that she had no question about what she observed.
 {¶ 11} On cross-examination, Frombough stated that approximately a month before this incident, she had learned that MacNellis lived in the townhouse up the street from her and that he had "a history." Frombough did not elaborate on this statement.
 {¶ 12} Uhl's testimony largely corroborated Frombough's testimony regarding Frombough's observation of MacNellis on April 24, 2007 and her phone call with Frombough immediately following the incident. Uhl testified that Frombough's voice was shaking when she called Uhl to report the incident. Uhl stated that prior to April 24, 2007, she knew that MacNellis' picture appeared on a sexual offender website. On cross-examination, Uhl disagreed that she had been trying to get MacNellis to move out since she learned he was a sexual offender.
 {¶ 13} Village of Seville Police Officer Charles Poultney also testified for the State. Officer Poultney testified that Uhl first came to the police department to report the incident between Frombough and MacNellis. He told Uhl that he needed Frombough to make the report as she was the victim. Thereafter, Frombough came to the station and gave a report of the *Page 5 
incident. He testified that Frombough's testimony at trial was consistent with the report she made of the incident.
 {¶ 14} Officer Poultney testified that he is familiar with MacNellis' townhouse and that the doorway to the townhouse is visible from the street. Officer Poultney testified that on May 16, 2007, he informed MacNellis that he cannot stand naked in his doorway. He stated that MacNellis denied the allegations.
 {¶ 15} Officer Poultney also testified that he had investigated a similar complaint regarding MacNellis in 2003. He stated that at that time, a young woman who was landscaping outside of MacNellis' townhouse reported that she had observed MacNellis standing naked in his doorway.
 {¶ 16} On cross-examination, Officer Poultney testified that Frombough told him that on April 24, 2007, she had seen a Middle Eastern woman standing near the edge of the road looking at MacNellis' townhouse. Officer Poultney acknowledged that the supplemental report he filed in this matter indicated that the incident happened on Monday the 23rd of April, not Monday the 24th of April. On re-direct, the State asked to amend the complaint to clarify that the correct date for the offense was April 23, 2007, not April 24, 2007.[1]
 {¶ 17} MacNellis testified that he lives at 2001 Grace Lane in Seville, Ohio and that he has resided at that address for approximately nine and one half years. He stated that he was at home on Monday, April 23, 2007. MacNellis stated that his doors and windows are always *Page 6 
closed and that he does not ever use his front door. He specifically stated that his front door was not open on April 23, 2007 and that he had not opened his front door in three years. MacNellis further testified that he was not at any point near the doorway of his townhouse on April 23, 2007 in a disrobed state. In addition, MacNellis stated that there was not anything located in his front door that resembled a naked man.
 {¶ 18} MacNellis testified that the only door he uses to enter and exit his townhouse is the garage door which is located in the back of his building. MacNellis stated that his picture has been posted on the sexual offender website for approximately eight or nine years.
 {¶ 19} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we find that MacNellis' conviction is supported by the manifest weight of the evidence. To establish the elements of public indecency, the State was required to prove, beyond a reasonable doubt, that MacNellis recklessly exposed his private parts "under circumstances in which [his] conduct [was] likely to be viewed by and affront others who [were] in [MacNellis'] physical proximity and who [were] not members of [MacNellis'] household[.]" R.C. 2907.09(A)(1). The record contained evidence from which the judge could have found MacNellis guilty of public indecency. The State set forth evidence that in the early evening hours, Frombough was walking down the street in front of MacNellis' townhouse when she happened to glance at MacNellis' townhouse. Frombough observed MacNellis standing at his front door wearing no clothing and fondling himself. MacNellis testified that her view of MacNellis was not obscured in any way.
 {¶ 20} By disbelieving MacNellis' testimony, the trial judge did not create a manifest miscarriage of justice. The record reflects that Frombough's testimony was consistent with the *Page 7 
exception of a minor detail regarding the nationality of the woman she saw in front of MacNellis' townhouse earlier in the evening.
 {¶ 21} We find that the judge's verdict convicting MacNellis of public indecency was not against the manifest weight of the evidence. As this Court has disposed of MacNellis' challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency.Roberts, supra, at *2. Necessarily included in this court's determination that the verdict was not against the manifest weight of the evidence, is a determination that the evidence was also sufficient to support the conviction. Id. MacNellis' first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY SENTENCING [MACNELLIS] TO A SUSPENDED 90-DAY JAIL SENTENCE, WHERE THE MAXIMUM JAIL SENTENCE PROVIDED BY STATUTE FOR HIS FOURTH DEGREE MISDEMEANOR CONVICTION OF PUBLIC INDECENCY IS ONLY 30-DAYS."
 {¶ 22} In his second assignment of error, MacNellis asserts that the trial court committed prejudicial error by sentencing MacNellis to a suspended 90-day jail sentence where the maximum jail sentence provided for a fourth degree misdemeanor conviction of public indecency is only 30 days. We agree.
 {¶ 23} MacNellis was convicted of one count of public indecency, in violation of R.C. 2907.09(A)(1), a misdemeanor of the fourth degree. Pursuant to R.C. 2929.24(A)(4),
 "Except as provided in section 2929.22 or 2929.23
of the Revised Code and unless another term is required or authorized pursuant to law, if the sentencing court imposing a sentence upon an offender for a misdemeanor elects or is required to impose a jail term on the offender pursuant to this chapter, the court shall impose a definite jail term that shall be one of the following:
 "For a misdemeanor of the fourth degree, not more than thirty days."
 {¶ 24} The trial court's sentencing entry reflects that MacNellis was sentenced to a suspended 90-day jail term. The State concedes that the trial court was not authorized to *Page 8 
sentence MacNellis to more than thirty days in jail. We agree with both parties that the trial court erred in imposing a sentence that exceeded the maximum sentence provided by R.C. 2929.24(A)(4). Accordingly, we sustain MacNellis' second assignment of error.
 III. {¶ 25} MacNellis' first assignment of error is overruled. His second assignment of error is sustained. The judgment of the Wadsworth Municipal Court is affirmed in part and reversed in part and the cause remanded for proceedings consistent with this opinion.
Judgment affirmed in part,
reversed in part,
and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed equally to both parties. *Page 9 
WHITMORE, J., DICKINSON, J., CONCUR.
[1] On appeal, MacNellis has not challenged the discrepancy in the dates. The trial court agreed with the State's contention that the date was not critical to this matter because MacNellis had not filed notice of alibi. *Page 1